## SNARE & TRIEST CO. v. FIREMAN'S FUND INS. CO. OF SAN FRANCISCO.

(Circuit Court of Appeals, Second Circuit. November 12, 1919.)

### No. 41.

INSURANCE ⬌178—INSURER NOT LIABLE IN PARTICULAR AVERAGE UNDER MARINE POLICY.

The loss of a concrete mixer, which broke from the deck of a barge, to which it was bolted, when the barge capsized at sea, in which position it was towed 30 miles to port, *held* not to render the insurer liable in particular average under a clause exempting it from such liability unless caused by "stranding, sinking, burning, or collision."

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by the Snare & Triest Company against the Fireman's Fund Insurance Company of San Francisco. Decree for respondent, and libelant appeals. Affirmed.

Snare Company procured from Fireman's Company marine insurance on a barge while in tow from Havana, Cuba, to Charleston, S. C.; but the policy was to be "free of particular average unless caused by stranding, sinking, burning, or collision." On the voyage contemplated, upon the high seas, and in moderate weather, the barge filled, and sank "decks to," but being of wood, and having no cargo other than some machinery and fittings bolted or otherwise fastened to the deck, could sink no farther. The tug continued to the northward, until about 30 miles off Mayport, Fla., when the barge turned upside down, whereupon the tugmaster made for Mayport as the nearest place having enough water to admit the barge bottom up and with the machinery bolted to her deck projecting downward. On arrival at Mayport, assistance was procured and the barge righted, when it was found that a "concrete mixer," the largest, heaviest, and tallest piece of machinery bolted to the deck, was gone; the deck giving evidence of a violent separation. Search in Mayport harbor failed to discover the mixer, and we find it fairly proven that, when the barge was fastened to the Mayport wharf, it was already gone. The probability is that the mixer went when the barge capsized; there is certainly no proof that it was lost in any other way.

The barge itself never grounded; there is some evidence that at low water in Mayport a small engine, also bolted to the deck, touched sandy bottom; but it is shown that neither said engine nor the barge was injured by such contact. A plank was off the barge's bottom, and the deck was badly torn up, apparently by the violent detaching of the "mixer," etc. For the cost of repairs and loss of mixer, libelant brought suit on the policy, and, after dismissal of libel, appealed to this court.

Hector M. Hitchings, of New York City, for appellant.

Lawrence Kneeland, of New York City, for appellee.

Before WARD, HOUGH, and MANTON, Circuit Judges.

⬌For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

HOUGH, Circuit Judge. The insured barge was always waterborne, and after becoming what the witnesses call "water-logged" was navigated over 80 miles, and then fastened to a wharf. Whether such a vessel can ever be said to have sunk, even within the meaning of a policy of insurance drawn and tendered by an insurer, is a question not requiring decision herein, because liability under this policy does not depend on the mere fact of a sinking (London Assurance v. Companhia de Moagens, 167 U. S. 149, 17 Sup. Ct. 785, 42 L. Ed. 113), but arises only if the particular average loss in suit was "caused by stranding (or) sinking." On the facts recited, and assuming that a vessel of such buoyancy that she cannot go lower than "decks to," is "sunk" when in that condition, the loss here claimed was not caused by such sinking but by a capsizing, which (so far as this record shows) was not the result of, nor caused by, the water-logging.

There never was a "stranding," for, even if the small engine that remained fast to the capsized barge did at one time touch sand, it was "touch and go" only, and therefore no stranding, under the London Assurance Case, supra.

The decree is affirmed, with costs.